## C. F. Birtman Company v. John R. Thompson.

### Gen. No. 13,293.

1. LANDLORD AND TENANT—*covenant of lease to furnish heat construed.* Where by the terms of a lease the landlord undertakes to supply steam heat, it is his business to see to it that his radiators and other means of supply are adequate, and that sufficient heat is supplied, and this notwithstanding the tenant's acknowledgment in the written lease that he has received the premises in good order and his covenant to keep the same in good repair.

2. LANDLORD AND TENANT—*damages recoverable for failure of former to furnish heat as agreed.* Loss of time of employees and resulting extra wages required to be paid, arising through the landlord's failure to supply heat as agreed, are proper to be considered in estimating the tenant's damages.

3. JUDGMENT BY CONFESSION—*what evidence sufficient to entitle allowance of motion for leave to plead.* In support of a motion to open up a judgment entered by confession, it is not essential to set forth all the evidence in detail; it is enough to show facts material to the issue, sufficient to make it clear that the issues are such as should be submitted to a jury. The rule is the same regardless of whether the evidence is shown by affidavits or by testimony *ore tenus.*

Judgment by confession. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed October 4, 1907. Rehearing denied October 18, 1907.

**Statement by the Court.** Under a warrant of attorney contained in a lease, appellee on May 5, 1906, caused to be entered in the Superior Court of Cook county a judgment by confession against appellant for the sum of $1,099.21 and costs. Appellant made a motion in the Superior Court to set aside the judgment and for leave to plead. Upon the hearing of the motion the court entered an order overruling same. This is an appeal from that order.

On October 9, 1902, appellant leased of one Charles H. Slack the fifth floor of the building at Nos. 45 to 49 Randolph street, Chicago, for a term of two and one-half years, commencing November 1, 1902, and ending April 30, 1905. The lease provides that the lessee "has examined and knows the condition of the premises and has received the same in good order and repair" and that said lessee will keep said premises in good repair. It also provides that the lessor is "to supply steam heat without charge from September 1st to April 30th each year during the continuance of the lease, and shall not be held liable for failure to supply same if caused by unavoidable accident to the apparatus or during repairs." Appellant occupied and paid rent for said premises from November 1, 1902, to January 31, 1905, when it removed therefrom. The lessor Slack assigned the lease to appellee, whose interest began in February or the first of March, 1905, after appellant had vacated the premises. Appellant did not pay rent for the months of February, March and April, 1905. The judgment, which appellee caused to be entered against appellant, covers the rent of the premises for said months, interest and attorneys' fees.

Appellant claims that in the cold weather, during which it occupied the premises, the lessor Slack did not heat said premises sufficiently and that as a consequence its men were unable to work for a part of each cold day. It estimates that during the winter of 1903–4 it paid its men $759.02 for time when they did not work because the floor was not sufficiently heated. Appellant urged in the Superior Court and is now urging in this court as the reason why said judgment should be opened, that it is entitled to recoup against

the three months' rent it did not pay, the estimated amount paid its men for time when they did no work.

Appellant on November 10, 1904, leased other premises, the term to begin May 1, 1905. It is claimed, however, that the premises in controversy were so inadequately heated during the early part of the winter that in December, 1904, appellant secured a supplemental lease of its newly leased premises and moved in to them in January, 1905, vacating the premises in question, without waiting until the lease in controversy expired.

Appellant first submitted to the Superior Court a verified motion and affidavit in support of its application to set aside the judgment, but the court declined to hear the matter upon said verified motion and affidavit and directed the parties to appear with witnesses in support of and against the motion. Pursuant to such direction appellant appeared with its witnesses in support of the motion to set aside the judgment and said witnesses were examined in open court. Appellee offered no evidence.

H. M. MATTHEWS, for appellant.

WEST, ECKHART & TAYLOR, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is conceded in behalf of appellee that "if a lessor breaks a covenant in a lease, by him to be kept and performed, the lessee may sue for damages for the breach of such covenant, and that in an action by a lessor for rent the lessee is generally allowed to set up his damages by way of recoupment." Sutherland on Damages, 3rd ed., vol. 3, section 876, page 2627. The same author states (page 2611) that in case of breach of the landlord's covenant to repair, the tenant may, among other remedies, abandon the premises if because of want of repair they have become untenantable, or he may occupy them without repair and recoup his damages in an action for the rent. See also Keating v. Springer, 146 Ill., 481–495, and cases there cited. The damages which the

tenant would in the latter case be entitled to recoup are such as he would be entitled to recover had he chosen to exercise his right to sue for damages for the breach of the covenant to repair, in which case the lessor would be chargeable with the difference between the rent provided in the lease and the rental value of the premises during the time the breach continued. We concur therefore in appellant's contention that if by reason of a breach on the part of the landlord of his covenant to supply heat, the premises in controversy were rendered untenantable, and appellant suffered damage by reason of such breach, the measure of damage would be the difference between the rent to be paid with heat properly supplied and the rental value without such heat so long as the breach of covenant continued. In Bien & Co. v. Hess, 42 U. S. Circuit Ct. of App., 421–422, it is said that the measure of damages, viz.: "the impaired rental value of the premises during the time of the existence of the breach is sanctioned by the authorities quoted on both sides." See also Crane v. Hardman, 4 E. D. Smith, 339.

It is urged in behalf of appellee that the lessor did not covenant to keep the leased premises warm, that all he was bound to do was to supply steam heat and that if such steam heat did not warm the demised premises because of defects in the radiators it was no concern of the lessor, since by the terms of the lease the lessee covenants that it had received the premises in good order and repair, and that it would "keep said premises in good repair." This contention is altogether too technical in view of the language of the covenant of the lease above quoted, to supply heat. By its terms the lessor was to supply steam heat, and if his radiators or other means of supply were inadequate it was nevertheless his business to find a way to supply the heat. He agreed to supply steam heat without specifying by what means it was to be supplied, and a covenant of this kind could be complied with only by supplying such quantity of heat as was reasonably adequate to make the premises tenantable for an "electrical and statical fixtures salesroom and office," for which purpose they were leased. The lessor further covenanted that

he should not be held liable for failure to supply heat when "caused by unavoidable accident to the apparatus or during repairs."

It appears, however, from the evidence apparently that the alleged failure to supply was not owing to defects in the radiators, but in part at least to the lessor's failure to properly maintain his fires. No question of the lessee's liability to keep the premises in good repair is involved.

It is further claimed on behalf of appellee that even if the evidence showed the lessor did fail to supply the proper amount of steam heat the judgment should not be opened because it is said "appellant did not show that it had suffered any legal damage by the alleged failure to supply steam heat." There was evidence introduced on the motion to set aside the judgment entered by confession and for leave to plead to the declaration and defend upon the merits, tending to show that appellant had paid wages to its employees for a considerable time during which they were unable to work because of the alleged breach by the lessor of the covenant to supply heat. In Bien & Co. v. Hess, above referred to, the breach of covenant relied upon by the lessee was the failure of the lessor—who had covenanted to repair —to repair a break in the cement floor of the cellar of the demised premises where the tenant had its engines and boilers. It appears that by reason of the break in the floor there was an influx of water during certain hours of every day for a certain period, at which time it was necessary for the tenant to divert its engines from their usual and proper work in order to operate pumps to keep the water from reaching the fires under the lessee's boilers. While thus engaged the operation of the tenant's lithographing presses was suspended and there was evidence tending to show that the tenant was compelled to and did work its employees at night to do the work which could have been done during regular business hours, except for the landlord's breach of covenant in failing to repair the cellar floor. By thus working overtime the tenant's output of work was the same as it would have been if the establishment had run during its regular hours from 8

A. M. to 5:30 P. M. The court said that "the wages paid to these men for working after hours in order to accomplish the work which but for the leak they could have done in working hours would seem to be the exact measure of defendant's loss." In Mining Co. v. Fraser, 130 U. S., 611, a charge to the jury that the "wages of the men employed in the mill whose time was lost while the mill was idle" was a proper element of damage, was approved by the Supreme Court. Appellee's counsel endeavor to distinguish these cases from that at bar. We deem it immaterial, however, whether or not appellant paid more wages than it would have paid if the steam heat had been furnished as the lease provided. If its employees while paid full wages were unable to work during hours for which they were receiving wages, such wages for unemployed time were equivalent to extra wages for the time they were able to work to the same extent as if they had been actually paid extra wages for overtime at night to do the work which but for the lessor's breach of covenant would have been done in regular business hours. It is said that in the case at bar no showing was made that appellant's employees did not accomplish as much during the hours they worked as they would if no breach of the covenant to supply heat had occurred. It would seem, however, scarcely necessary to introduce specific proof that men did not accomplish as much in part of a day as when working full time, in the absence of evidence to the contrary. In Crane v. Hardman, *supra,* where it was sought to recoup damages for a breach of contract in not furnishing steam, it was said "the right to recoup such damages cannot be denied. * * * As to the amount surely it was not excessive to allow the defendants their actual loss while the works were idle and the proof was direct that the defendants' men could not work in consequence."

It is apparently claimed that the proof was not sufficient to entitle appellant to recover damages as claimed. It is not necessary in support of a motion of this character to set forth all the evidence in detail. It is sufficient to show facts material to the issue sufficient to make it clear that the issues

are such as should be submitted to a jury. In Lake v. Cook, 15 Ill., 353–355, it was said that "Courts of law exercise an equitable jurisdiction over judgments entered by confession upon * * * warrants of attorney"; and that "if the case is involved in doubt or the testimony is so contradictory that the truth cannot be ascertained with reasonable certainty an issue should be directed to try the question; in other words, the defendant should be let into a defense on the merits." In Pitts v. Magie, 24 Ill., 610, it is said: "The only question is whether such a case was presented by the affidavits read on both sides as should be submitted to the decision of a jury." In the later case, Gilchrist Trans. Co. v. North Grain Co., 204 Ill., 513, it is said: "If the affidavits on the part of the defendant show a meritorious defense the court is not authorized to try the case on affidavits. * * * The right of the defendant is to have the case passed upon by a jury." The fact that in this case the trial court of his own volition heard the motion upon evidence taken in open court instead of upon affidavits does not affect the principle stated. We are compelled, for reasons indicated, to the conclusion that the judgment of the Superior Court should be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*