---

(No. 13634.—Reversed and remanded.)
JULIUS OPPENHEIMER, Appellant, *vs.* MARY SZULERECKI, Appellee.

*Opinion filed February 15, 1921—Rehearing denied April 8, 1921.*

1. LEASES—*when repairs by tenant may be charged to landlord.* Where a landlord has covenanted to make all necessary repairs and has refused to do so upon proper request the tenant may make the necessary repairs and charge them to the landlord; and the covenant to repair includes the duty to re-build in case of destruction of the premises.

2. SAME—*remedies of tenant for breach of covenant to repair.* In case of the landlord's breach of his covenant to repair, the tenant may (1) abandon the premises if they have become untenantable; (2) he may make the repairs himself and deduct the cost from the rent; (3) he may occupy the premises without repair and recoup his damages in an action for rent; (4) he may sue for damages for breach of the covenant to repair.

3. SAME—*when tenant is entitled to lien for restoring building after fire.* If a lease contains no provision by which the landlord agrees to pay for improvements constructed by the tenant but only a covenant to make repairs, and the landlord refuses to restore the leased building after it has been rendered untenantable by fire, the tenant may restore the building and is entitled in equity to a lien to the extent that the cost of restoration was reasonably incurred, but not for other damages arising out of the breach of the covenant to re-build.

4. SAME—*distinction between equitable lien and common law lien.* The lien which a court of equity will decree against property to secure the performance of an obligation differs from the common law lien in that it is not an estate in the property and does not give any right of possession, but is only a right to proceed in an equitable action against the subject matter of the lien and to have it sold or sequestered and its proceeds or rents and profits applied to the demand of the owner of the lien.

297—6

5. SAME—*possession is not necessary to enforce tenant's equitable lien for improvements made by him because of default of the landlord—injunction.* Where a tenant is compelled to restore a building destroyed by fire because of the failure of the landlord to perform his covenant to repair, possession by the tenant is not necessary to enforce his equitable lien for his expenses on the restored building, and in his proceeding to have a lien declared he will not be entitled to an injunction against the prosecution of a forcible detainer suit instituted by the landlord after the term of the lease has expired.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ROSENTHAL, HAMILL & WORMSER, (LESSING ROSENTHAL, and HARRY MARKHEIM, of counsel,) for appellant.

AUSTIN J. ROONEY, and DANIEL RILEY McMASTER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Julius Oppenheimer filed a bill of complaint in the circuit court of Cook county alleging that on February 19, 1908, Mary Szulerecki demised and leased to him certain premises in the city of Chicago from May 1, 1908, to April 30, 1918, for the sum of $12,000, payable in monthly installments of $100 each, in advance; that the lease contained a clause by which it was agreed that in the event that the demised building, or any part thereof, should be rendered untenantable by fire or other casualty the lessor should restore the same within ninety days after such loss, damage or destruction, and that the lessee should not be obligated to pay any rent for any part of the demised premises rendered untenantable while the same were untenantable, and further, that in the event of the failure of the lessor to restore the premises, the lessee might at his op-

tion, but without prejudice to his other remedies, terminate the lease; that the complainant at the time the lease was entered into had been in the occupancy of said premises under a former lease for five years and had used them for the conduct of his business in connection with the adjoining premises belonging to him, and has continuously since then so occupied and used said premises and has in all things complied with the covenants and obligations imposed upon him by the lease; that on December 24, 1914, the building upon the demised premises was damaged by fire and thereby rendered wholly untenantable and unfit and valueless for mercantile purposes; that Mary Szulerecki insisted that by virtue of the fire the lease was terminated and demanded that the complainant vacate the premises and refused to restore the building; that in consequence of her default the complainant was compelled to, and did, erect upon the premises such a building as Mary Szulerecki was obligated by her covenant to erect, at an expense of more than $5000; that Mary Szulerecki brought suit in forcible entry and detainer for the possession of the premises and recovered a judgment, which the Appellate Court reversed, and the judgment of the Appellate Court was afterward affirmed by the Supreme Court of Illinois; that for many years past the complainant has conducted a large dry goods department store upon said premises and his own premises adjoining them on either side as a single and entire business, and all the buildings on his own premises as well as those on the leased premises were destroyed by the fire of December 24, 1914; that after the complainant had waited a reasonable time to permit Mary Szulerecki to comply with her covenant to restore the premises, and after serving upon her formal notice to do so, and after her final refusal so to do, the complainant restored the premises as aforesaid; that in consequence of the necessity that the reconstruction upon the complainant's premises be consistent and harmonious and usable with that

upon the leased premises and that the plans for all of such reconstruction be settled and determined before the commencement of work thereon, the erection of all of the buildings and the resumption of the complainant's business were delayed for a long time by reason of the refusal of Mary Szulerecki to keep and perform the covenant, and by reason of the premises the good will of the complainant's business was seriously impaired and complainant lost large profits, amounting to $48,000, which he otherwise would have earned during the period that the resumption of his business was delayed; that the damages suffered by the complainant by reason of the breach of her covenant by Mary Szulerecki in failing to restore the premises aggregate the sum of $60,000; that at the time of the fire, and continuously since, the fair market value of the leased premises was somewhere between $25,000 and $30,000; that through the erection by the complainant of the building upon the leased premises the covenant of Mary Szulerecki to restore was specifically performed by the complainant and the leased premises were permanently improved and enhanced in value, and that the complainant is entitled to a lien upon the premises for his costs, expenses and outlays in that behalf and interest; that he has been continuously in possession of the premises and is entitled to retain such possession until his claims and all damages sustained by him have been paid; that after the expiration of the lease on May 1, 1918, Mary Szulerecki began a suit in forcible detainer against the complainant for the possession of the leased premises, to which the complainant has no defense at law, his defense and claim being cognizable solely in equity, and that if she is permitted to prosecute her suit the complainant will be deprived of his rights in the premises and the security to which he is entitled for the enforcement of his claims. Anastazia Szulerecki was also made a defendant as the holder of a pretended mortgage on the premises which appeared of record, the bill alleging that there was no con-

sideration for the mortgage, no indebtedness secured by it and that it was not a lien on the premises. The bill prays that the restoration of the building by the complainant may be decreed to be a performance by him on behalf of the defendant, and at her risk and expense, of her covenant to restore the demised premises; that the damages which the complainant has suffered by reason of her breach of the covenant by Mary Szulerecki be ascertained and determined; that an account of the costs, expenses and outlays of the complainant in effecting the restoration of the premises may be taken, and that all sums of money found due the complainant may be declared a lien on the leased premises, and that an injunction may be allowed restraining Mary Szulerecki from prosecuting the forcible detainer suit against the complainant. The complainant made a motion for a preliminary injunction, which the court denied, and the defendant having demurred to the bill, the demurrer was sustained and the bill was dismissed for want of equity. The Appellate Court affirmed the decree and granted a certificate of importance, and the complainant has appealed to this court.

The lease was for a definite term, which had expired when the forcible detainer suit was brought, and the appellee was therefore entitled to the possession of the premises unless the breach of the covenant to restore the building in case it should be rendered untenantable by fire gave the lessee a right to retain the possession until the damages occasioned by such breach are paid. The lease provided that in the event of the lessor's failure to restore the building the lessee might at his option, but without prejudice to his other remedies, terminate the lease. The lessee elected not to terminate the lease, and it was held in *Szulerecki v. Oppenheimer,* 283 Ill. 525, that he had the right to the possession of the premises for the remainder of the term. The lease did not provide what the other remedies of the lessee were, aside from the option to terminate the lease,

but counsel on both sides agree in their briefs that the remedies available to a tenant on the breach of his landlord's covenant to repair are correctly stated in *Cromwell* v. *Allen,* 151 Ill. App. 404, as follows: "In case a landlord fails to make repairs in violation of his covenant the tenant may (1) abandon the premises if they become untenantable by reason of want of repair; (2) he may make the repairs himself and deduct the cost from the rent; (3) he may occupy the premises without repair and recoup his damages in an action for rent; (4) he may sue for damages for breach of the covenant to repair, and the damage recoverable in this last instance is usually the difference between the value of the premises in repair and out of repair." It has been held that where the landlord has agreed to make all necessary repairs and has refused to do so upon proper request, the tenant may make the necessary repairs and charge them to the landlord. (*Hendry* v. *Squier,* 126 Ind. 19; *Thompson* v. *Clemens,* 96 Md. 196; *Miller* v. *McCardell,* 19 R. I. 104; *Meyers* v. *Burns,* 35 N. Y. 269.) The rule is stated in Taylor on Landlord and Tenant, (9th ed. sec. 330,) as follows: "A general covenant to repair, when made by the lessor, requires him not only to keep the premises in good repair but to put them in that condition although the tenant may have entered. * * * If the landlord neglects to make suitable repairs after being thereunto required by the tenant, the latter may, after waiting a reasonable time, make such repairs himself and recover the expense from his landlord, or he may, at his option, leave the premises unrepaired and recover any damages he may have sustained from the landlord's default therein." The covenant to repair includes the duty to rebuild in case of destruction of the premises. *Crocker* v. *Hill,* 61 N. H. 345; *Leavitt* v. *Fletcher,* 10 Allen, 119.

The building constructed on the premises became a part of the real estate the title of which was vested in the appellee, who was at once liable to an action by the appellant

for its value.  The lease contains no express language making the cost of restoration by the tenant, or any other damages arising from the breach of the appellee's covenant, a lien on the premises, but the appellant contends that the court should decree a lien in his favor for the value of the building and permit him to retain possession until it is paid.  It was said in *Williams* v. *Vanderbilt,* 145 Ill. 238, quoting from 3 Pomeroy's Equity Jurisprudence, (sec. 1234,) that "the theory of equitable liens has its ultimate foundation in contracts, express or implied, which deal with or in some manner relate to specific property."  In the next section of Professor Pomeroy's work it is said that "every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or incumbrancers with notice."  In such cases equity will enforce the expressed intention that the particular property shall be security for the performance of the obligation by decreeing a lien upon the property.  This rule is not, however, limited to express contracts, for "in addition to the general doctrine that equitable liens are created by executory contracts which in express terms stipulate that property shall be held, assigned or transferred as security for the promisor's debt or other obligation, there are some further instances where equity raises similar liens without agreement therefor between the parties, based either upon general considerations of justice (*ex æquo et bono*) or upon the particular equitable principle that he who seeks the aid of equity in enforcing some claim must himself do equity."  (3 Pome-

roy's Eq. Jur. sec. 1239.) Illustrations of equitable liens so declared are cases where two or more persons own real estate in common and one of them has made permanent improvements on the property which have added to its value. Upon partition of the estate a court of equity will allot to the co-tenant making the improvement the portion improved without taking account of its value, but if such division cannot be made will create a lien upon the proceeds of the other shares for their proportionate amounts of the increased value caused by the improvement. *Louvalle* v. *Menard,* 1 Gilm. 39; *Dean* v. *O'Meara,* 47 Ill. 120; *Kurtz* v. *Hibner,* 55 id. 514; *Mahoney* v. *Mahoney,* 65 id. 406; *Noble* v. *Tipton,* 219 id. 182.

Another illustration of a lien not arising by contract but declared by a court of equity upon general considerations of justice is the vendor's lien. This lien does not grow out of any agreement of the parties but out of the equitable consideration that "no man shall be compelled to part with his title till he receives the consideration; and so vigilant are the courts of equity to protect the seller, that although an absolute conveyance be made and no mortgage or other security taken, still in the hands of the vendee or a subsequent purchaser with notice the vendor has a lien on the land for his money." (*Dyer* v. *Martin,* 4 Scam. 146; *Croft* v. *Perkins,* 174 Ill. 627; *Wright* v. *Buchanan,* 287 id. 468.) Here the appellant and the appellee were not cotenants nor were they vendor and vendee, but their relation was such that they had a common interest in the property and that the improvement which the appellant was entitled to place upon the property, and which the appellee was bound to pay for, became the property of the appellee. It requires no undue extension of the principle that no man shall be compelled to part with his title till he receives the consideration, to apply it to this situation. The equitable lien thus recognized is not an estate in the property and does not give any right of possession. It differs in this re-

spect from the common law lien, which is simply the right to retain possession until some obligation of the owner is satisfied, while the equitable lien is no more than a right to proceed in an equitable action against the subject matter of the lien and to have it sold or sequestered and its proceeds or rents and profits applied to the demand of the owner of the lien. (3 Pomeroy's Eq. Jur. sec. 1233.)

The appellee has cited a number of cases involving the claim of a lien for improvements made by a tenant in accordance with the provisions of a lease by which the landlord agreed to pay for the improvements at the expiration of the term, in which it has been held that in the absence of a specific provision for a lien the effect of the landlord's covenant to pay for the improvements was merely to make him liable to an action for their value and that the tenant had no other remedy. In each of those cases the lease contemplated the expenditure of money by the tenant and its re-payment at the expiration of the term with no reservation of a lien, and it was held that the matter existed wholly in contract; that the failure to reserve a lien implied that none was intended, and that the court could not supply the omission when there was no agreement by the parties for a lien. In this case there was no contract in regard to the making of any improvement by the tenant. That subject matter did not enter into the contemplation of the parties. The destruction of the building was provided for by the covenant of the appellee to re-build, and there was no provision in regard to the rights of the parties in case of her breach of the covenant. On the occurrence of such breach the appellant, in order to have the beneficial enjoyment of his term, was compelled to re-build,—not by virtue of any contract to do so but because of the default of the appellee. Assuming the correctness of the decisions referred to, there is a distinction between the liability for an improvement which the tenant agrees to make at his own expense, for which the landlord agrees to reimburse him at the expira-

tion of the term, and a liability for the restoration of a building which the tenant is obliged to make on account of the landlord's default, which results in the landlord's acquiring the ownership of the restored building at the expense of the tenant. The former case is provided for by the contract while the latter is not, but the rights of the parties in the emergency which was not foreseen and provided for, are left to be determined by the general principles of equity and justice.

The covenant to surrender possession at the expiration of the term is not affected by the failure of the landlord to perform his covenant or the existence of the tenant's lien for his reimbursement. It is an express provision of the contract which is not subject to any condition precedent except the expiration of the term. Possession is not essential to the equitable lien, which may be enforced against the property in the possession of the landlord. The motion for an injunction against the prosecution of the forcible detainer suit was properly denied, but the complainant still had the right to enforce his lien to the extent that the cost of the restoration of the building was reasonably incurred but not for any other damages arising out of the breach of the covenant to re-build. If the complainant has incurred any other damages he must rely upon the defendant's personal liability for their recovery. The demurrer should therefore have been overruled.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded to the circuit court, with directions to overrule the demurrer, and for further proceedings consistent with this opinion.        *Reversed and remanded, with directions.*