### George M. Loy, Appellee, v. Robert E. Sparks, Appellant.

### Gen. No. 9,460.

October term, 1939. Heard in this court at the October term, 1939. Opinion filed January 25, 1940. Rehearing denied March 19, 1940.

Powers & Powers, of Streator, for appellant.

Painter & Hayes, of Streator, for appellee.

Mr. Presiding Justice Dove delivered the opinion of the court.

On April 23, 1937, the plaintiff George M. Loy entered into a written lease with the defendant, Robert E. Sparks, by the provisions of which Loy leased to Sparks his two-story brick building and lot 10 in block 21 in the city of Streator together with a five-horsepower electric motor and one Emery wheel stand, for a term of two years, beginning at noon on June 10, 1937 and ending at noon on June 10, 1939. The rent was to be paid in instalments of $125 per month beginning on June 10, 1937. The defendant was occupying the premises at the time the lease was executed and had been for several years. The building is two stories in height, 150 feet long and at the time the lease was executed was used by defendant as a garage. The lower floor is of cement and a ramp leads from the first floor to the second and disabled cars are hauled over this ramp to the repair department which is located at the rear of the second floor. The instalments of rent due July 10, 1938, August 10, 1938 and September 10, 1938 not having been paid, this suit was instituted by the plaintiff to recover this rent. The defendant answered and filed a counterclaim in which he alleged that the lease provided that the plaintiff would at his expense keep the roof, furnace, heating equipment and building in a good and serviceable condition for which it was leased and that the plaintiff failed to do so and permitted the electrical apparatus to become so badly out of repair that the insurance department of the State of Illinois insisted that it be rehabilitated and further permitted the floor of the second story and the ramp leading thereto to become so out of repair that it became dangerous for the employees of the

defendant to work thereon, that the defendant repeatedly requested the plaintiff to make these repairs but he refused, that thereupon defendant caused the floor to be repaired at a cost of $442.50, of which amount he had paid the contractor the sum of $299.62 at the date the complaint was filed and caused the electrical apparatus to be repaired at a cost of $75.38, which amount he had paid, that said amounts so paid by him in making said necessary repairs aggregated $375 and defendant prayed for recoupment against the plaintiff for this amount. A jury was waived and the issues were submitted to the trial court resulting in a judgment in favor of the plaintiff for $375 and the defendant and counterclaimant appeals.

The lease expressly provided that the premises were to be used by defendant only as a storage and repair garage, that appellee was to have full access thereto for the purpose of examining and inspecting the same, or to make any needful repairs or alterations and that he would ''at his expense keep the roof, furnace and heating equipment and building in a good and serviceable condition for the purposes for which it is herein leased.'' There is no serious conflict in the evidence. It discloses that the floor at the west or front end of the second floor, as well as the ramp leading from the first to the second floor, became unsafe and in such condition that they would not support automobiles as they were being transported thereon. An examination of the several photographs found in this record, as well as a consideration of the evidence of all the witnesses who testified disclose this to be true and appellant brought the matter to the attention of appellee, who positively stated he would not spend a penny in making any repairs thereon. The evidence further discloses that on May 27, 1938, a deputy fire marshal of this State addressed a written notice to appellee calling attention to the electrical equipment in this building and ordering the defects therein set forth corrected

within 15 days. Appellee brought the matter to the attention of appellant and insisted it was his duty to make the corrections. Appellant contended that such repairs should be made by appellee. Appellee refused. Appellant was then required either to make the repairs to the floor, ramp and electrical apparatus or discontinue the use of the premises or at least a portion thereof. Appellant did what any sensible business man would do and it is not contended by appellee that the floor, ramp and electrical equipment did not need repairing nor is it insisted that the amount appellee expended in so doing was not the usual, customary and reasonable cost thereof. Appellee's contention is that appellant must have been the cause of the floor breaking through and he should have repaired it, but instead of repairing it he caused an entire new floor to be constructed and caused some new and heavier wiring and electrical equipment to be installed and now seeks to deduct the cost thereof from the amount concededly due appellee from appellant for rent. The uncontradicted evidence is that the floor could not be repaired and made serviceable for the purpose for which it was being used. John Lightholder, a building contractor, so testified. E. M. Rinehart, an electrical contractor for 25 years, testified about replacing the old fuse box near the front door with a new cabinet of eight switches and removed the old open knife switch and replaced it with a safety coil switch and the other work he did all as required by the notice to appellee from the fire marshal.

In appellee's brief authorities are cited holding that the landlord is under no duty to make repairs unless he expressly agrees to do so by his lease and that inasmuch as appellant, the tenant, continued to occupy the leased premises he is obligated to pay the stipulated rent. Such is the law but where the landlord does expressly agree to keep the building in a good and serviceable condition for the purposes for which it is

leased and breaches that covenant, then the tenant may make the repairs himself and deduct the cost thereof from the rent. *Oppenheimer v. Szulerecki,* 297 Ill. 81. In the course of its opinion in that case the court said: ''It has been held that where the landlord has agreed to make all necessary repairs and has refused to do so upon proper request, the tenant may make the necessary repairs and charge them to the landlord,'' and quotes from Taylor on Landlord and Tenant as follows: '' 'A general covenant to repair, when made by the lessor, requires him not only to keep the premises in good repair but to put them in that condition although the tenant may have entered. . . . If the landlord neglects to make suitable repairs after being thereunto required by the tenant, the latter may, after waiting a reasonable time, make such repairs himself and recover the expense from his landlord, or he may, at his option, leave the premises unrepaired and recover any damages he may have sustained from the landlord's default therein.' ''

*Cromwell v. Allen,* 151 Ill. App. 404, also quoted with approval in the *Oppenheimer* case *supra,* was an action by a tenant against her landlord to recover damages for personal injuries sustained by her when she fell through a board in a platform at the rear of the building onto which the rear door of the building opened. After stating that in the absence of special agreement the tenant takes the premises as he finds them subject to his own risk, that there is no implied covenant that they are fit for habitation or that they are in any particular condition of repair, the court said that the relation of landlord and tenant created no obligation or duty on the landlord to make repairs unless he assumed such duty by express agreement with the tenant. ''In case a landlord fails to make repairs in violation of his covenant,'' continues the opinion, ''the tenant may (1) abandon the premises if they become untenantable by reason of want of repair; (2) he may make the repairs

himself and deduct the cost from the rent; (3) he may occupy the premises without repair and recoup his damages in an action. for rent; (4) he may sue for damages for breach of the covenant to repair, and the damage recoverable in this last instance is usually the difference between the value of the premises in repair and out of repair.'' After citing textbooks and cases, the court then says: ''The foregoing states the law as it is applied to ordinary breaches of the landlord's covenant to repair generally; and, as thus stated, it must be admitted to be about what the ordinary landlord and tenant would expect to find it.''

In the instant case the evidence is that appellant had expended in making the necessary repairs which appellee expressly obligated himself to make, an amount exceeding the amount due appellee under the lease for rent and to recover which this suit was instituted. By his answer and counterclaim appellant seeks to defeat appellee's demand. The facts disclosed by this record sustain the allegations of his counterclaim and in our opinion the trial court erred in not so finding.

The judgment appealed from is reversed and as this cause was tried by the court without a jury, judgment will be entered in this court in favor of appellant and against appellee in bar of the action.

*Judgment reversed and judgment here.*