Sterling Savings and Loan Association, an Illinois Corporation, Plaintiff-Appellee, v. Alvin A. Schultz, et al., Defendants-Appellees, Bank of Lyons, Defendant-Appellant.

Gen. No. 50,487.

First District, Third Division.

May 19, 1966.

Rehearing denied June 17, 1966.

Herbert Lesser, Willard J. Lassers, Elson, Lassers and Wolff, of Chicago, for appellant.

Edward J. Barrett, of Chicago, for appellee, Mary Schultz; no brief filed for appellee, Sterling Savings and Loan Association.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Sterling Savings and Loan Association, brought an action in March of 1963 to foreclose a mortgage on a residence at 1046 North Lathrop Ave., River Forest, Illinois, title to which was held by the Chicago City Bank and Trust Company, as trustee under a land trust. The beneficiaries of the trust, Alvin and Mary Schultz, and the trustee, were named as defendants in the foreclosure suit. Subsequently, the Bank of Lyons, the appellant here, was added as a party since it claimed an interest in the property because of a judgment which it held against Alvin Schultz in the amount of $62,038.-41. This judgment had been entered on May 8, 1961, and execution had been issued and served.

After the amount found owing by the decree of foreclosure and other legal expenses had been satisfied from the proceeds of the sale, there remained an excess of $8,881.48 in the hands of the master.

The Bank of Lyons claimed the sum by virtue of a judgment lien, and because of an equitable lien created by the filing of a creditor's bill on April 13, 1962. Mary Schultz claimed this sum because of an equitable lien created by advancements made by her which helped to pay off a prior mortgage and because of an estate of homestead. The lower court ordered the sum of money paid to her. It is from this order that an appeal was taken by the Bank of Lyons.

The contentions of the appellant, the Bank of Lyons, are: (1) That the trial court erroneously ordered payment of the surplus funds to Mary Schultz; (2) that its judgment lien against the interest of Alvin Schultz in the land trust was prior to any claim of Mary Schultz; (3) that the filing of a creditor's complaint gave the bank an equitable lien upon the beneficial interests in the land trust; (4) that the court erroneously awarded Mary Schultz a homestead in the amount of $2,500.

The facts are: The property had been acquired in 1956 by the Chicago City Bank and Trust Company as trustee under land trust number 5596. The original beneficiaries of the trust were Sylvia and Norman Robinson, who later assigned their beneficial interests to Mary and Alvin Schultz. Initially, Alvin and Mary Schultz each had an undivided 50% beneficial interest in joint tenancy. On October 26, 1960, a decree of divorce was entered in favor of Mary against Alvin in the superior court of Cook County; said decree provided for alimony and child support, and provided that the premises here involved should be "sold by the plaintiff, Mary Schultz, and defendant, Alvin A. Schultz, and the net proceeds thereof shall be divided between the parties, share and share alike." The property was not sold as the decree provided.

However, on March 27 and 30, 1961, the Schultzes assigned their beneficial interests in the land trust to

97

a nominee, and the nominee reassigned to each of them a 50% interest, not as joint tenants, but as tenants in common. On March 31, 1961, the mortgage to Sterling Savings and Loan was executed by the trustee of the land trust.

On May 8, 1961, the Bank of Lyons obtained its judgment of $62,038.41 against Alvin. Execution was issued on August 1, 1961, and was served upon Alvin on August 10, 1961. In order to enforce collection of the judgment, the Bank filed a creditor's bill in the circuit court of Cook County against Alvin and Mary Schultz on April 13, 1962.

That complaint set forth the entry of judgment and the service of execution upon Alvin. It alleged that Chicago City Bank held title to real estate in which Alvin had an interest, and that Mary had property which was owned by Alvin. The bill prayed that Alvin be decreed to pay the amount due, and to apply thereto any money or property, real or personal, in law or in equity, debts, choses in action, or equitable interest belonging to him or held in trust for him, or in which he is in any manner beneficially interested, and that he be enjoined from transferring any property in which he had an interest.

On May 10, 1962, Mary filed a petition in the divorce court alleging that $10,250 was due from Alvin for alimony and child support provided for in the divorce decree, and $2,639.17 for payments she had made on the existing mortgage. Judgment was entered on the same day for the amount claimed and interest thereon. On October 19, 1962, an order was entered in the divorce court modifying the decree of divorce and ordering Alvin to execute and deliver to Mary an assignment of his beneficial interest in the trust. This assignment, which was dated October 21, 1962, was not filed with the trustee of the land trust during the lifetime of Alvin, but was received by the trustee on May 23, 1963, three

98

days after the death of Alvin. The assignment was not accepted by the trustee because it failed to comply with the provisions of the trust agreement. This agreement provided that an assignment in order to be effective must be delivered to the trustee prior to the death of the beneficiary making the assignment. Also, it might be pointed out at this time that even if the assignment had been delivered prior to Alvin's death, it would have been subject to the lien of the judgment creditor, the Bank of Lyons, as will hereinafter be pointed out in this opinion.

The foreclosure suit by Sterling Savings was filed on March 29, 1963. The suit was heard by a master in chancery who found that the mortgage was a valid lien and recommended entry of a decree of foreclosure. This recommendation was followed by the court and the decree was entered on October 15, 1964. It recited that if there was a surplus after the sale, said surplus should abide further order of the court. The sale was held in November, 1964, and after the amount of the mortgage and the expenses of the sale and other expenses were paid, there remained in the hands of the master $8,881.-48.

Mary filed a petition on January 8, 1965, which petition recited: that the master held the sum of $8,881.48; that she and Alvin had acquired the property in 1956, each with a 50% undivided interest; that Alvin had assigned to her in October of 1962 his beneficial interest and that by reason thereof she was the owner of the entire beneficial interest. Mary claimed a homestead exemption in the statutory amount of $2,500, and alleged that she had made advancements in the amount of $9,447 in the form of payments on a prior first mortgage debt, and for upkeep and maintenance, which advancements were made prior to the judgment of the Bank of Lyons and prior to execution thereon. Hence, Mary claimed an equitable lien in the total amount of $11,947

99

on the property to cover her advancements and her claim for homestead. She asked that the master be ordered to turn over to her the sum of $8,881.48 and that she be declared to have an equitable lien to the extent of $3,065.52 out of any subsequent sale or disposition of the property.

Mary relied upon a finding by the master, subsequently adopted by the court in its foreclosure decree, that she had made the foregoing advancements. However, the master found that Mary did not have a lien or any interest in the premises by reason of these payments. At most, he found such payments might create a right of reimbursement or contribution against the beneficial interest of Alvin. He concluded that this determination must be made in the creditor's bill.

On January 26, 1965, the bank filed an answer to Mary's petition and a petition of its own, which in substance alleged that it had obtained a judgment against Alvin and had filed a creditor's bill, and therefore had succeeded to the beneficial interest in the land trust to the extent of the interest of Alvin as of the date of the filing of the creditor's bill, April 13, 1962. Hence, all transactions which attempted to transfer the interests of Alvin subsequent to said date were fraudulent as to the Bank of Lyons.

The petition prayed that the master be directed to hold the surplus of the sale, or that it be held by the clerk of the circuit court, pending a determination of the creditor's bill.

On February 5, 1965, the trial court found that Mary had an equitable lien on the premises in the amount of $9,447 plus a homestead in the statutory amount of $2,-500. It ordered the sum of $8,881.48 be turned over to her, and further ordered that she have an equitable lien on the premises already sold in the amount of $3,065.52. The Bank of Lyons appeals from this order.

As a preface to this opinion it must be mentioned that Mary has taken two diverse positions on appeal as to the effect of her equitable lien; on the one hand she argues that it attached to the premises, and later she argues that it attached to the half-interest of Alvin in the trust. For the purposes of this appeal, as will be shown, it makes no difference to the decision upon which theory she attempts to base her claim.

The decision of the trial court which found that Mary had an equitable lien upon the premises must be reversed. Mary contends that certain contributions made by her to pay off a prior mortgage, and for upkeep and maintenance on the premises, gave rise to an equitable lien in her favor. The Bank of Lyons disputes this alleged lien because of a rule stated in several Illinois cases that an equitable lien is created where there is an express executory agreement in writing indicating an intention to make some property security for a debt or other obligation. (Cf. Byron v. Byron, 391 Ill 256, 62 NE2d 790, where the court held that a mere verbal promise was not sufficient to sustain an equitable lien; also: Aldrich v. R. J. Ederer Co., 302 Ill 391, 134 NE 726; Walker v. Brown, 165 US 654; Sanner v. Sanner, 257 Ill App 305.) In the instant case, since the record discloses no agreement between Mary and Alvin indicating an intention to make the property at 1046 Lathrop Ave., River Forest, Illinois, security for a debt, the bank contends that there is therefore no lien.

Mary Schultz has cited the case of Oppenheimer v. Szulerecki, 297 Ill 81, 130 NE 325, in which certain language indicates that an express agreement is not necessary to sustain an equitable lien. In that case the court granted a lessee an equitable lien upon certain premises that he had rebuilt after they had been destroyed by fire. The lessor had refused to restore the building even though the lease specifically required her to do so.

101

Though there was no agreement in the lease making the cost of restoration a lien upon the premises, the court granted a lien to the lessee "based . . . upon general considerations of justice."

In the instant appeal, it is not necessary to the decision to decide whether or not an agreement is necessary to sustain an equitable lien. Even assuming that such a lien could be established without an agreement, the proof in this case fails to establish an equitable lien on behalf of Mary Schultz.

██ Before the master, Mary Schultz introduced substantial testimony and evidence to show that she had made advancements in the form of mortgage payments and payments for upkeep and maintenance of the subject premises. However, no evidence was introduced to show what payments were made by Alvin Schultz upon the mortgage and for upkeep. There is nothing to indicate that Alvin did not advance comparable amounts. Merely because Mary advanced $9,947 does not give her an equitable lien unless this amount advanced was over and above the amount advanced by Alvin.

At the time these advancements were made, Alvin and Mary were husband and wife and were the holders of the certificates of beneficial interest in the land trust as joint tenants. The premises held under this trust were occupied by them as a residence.

Under the provisions of the trust agreement each beneficiary was entitled to an interest in the earnings, avails, and proceeds of the property. Since each was entitled to an equal share of the proceeds, there is no just reason why each should not be required to advance equal sums to pay off a mortgage upon the property and provide for the upkeep thereof.

There was nothing in the trust agreement, nor was there any separate agreement between Alvin and Mary, whereby Alvin was required to pay off the mortgage and provide for the upkeep of the property by his sole

efforts. Since both were entitled to the proceeds from the property both were obligated to pay expenses thereon equally.

In the Oppenheimer case, supra, cited by Mary Schultz in support of her equitable lien, the court commented at p 88 on cases in which one cotenant has made permanent improvements on the property which have added to its value: "Upon partition of the estate a court of equity will allot to the cotenant making the improvement the portion improved without taking account of its value, but if such division cannot be made will create a lien upon the proceeds of the other shares for their proportionate amounts of the increased value caused by the improvement. Louvalle v. Menard, 1 Gilm 39; Dean v. O'Meara, 47 Ill 120; Kurtz v. Hibner, 55 id. 514; Mahoney v. Mahoney, 65 id. 406; Noble v. Tipton, 219 id. 182."

■ As the above language indicates, a lien is created in favor of one cotenant only when, and to the extent, the contributions of that tenant exceed the proportionate amount owed by such tenant. Similarly, Pomeroy in his treatise on Equity Jurisprudence, 5th ed, vol 4, § 1240, states: "Where two or more persons are joint purchasers or owners of real or other property, and one of them, acting in good faith and for the joint benefit, makes repairs or improvements upon the property which are permanent, and add a permanent value to the entire estate, equity may not only give him a claim for contribution against the other joint owners, *with respect to their proportionate shares of the amount thus expended,* but may also create a lien as security for such demand upon the undivided shares of the other proprietors." (Emphasis added.) Therefore, a cotenant is not entitled to a lien for amounts advanced unless such amounts proportionately exceed those of the other cotenants. Mary Schultz is not entitled to a lien since there is nothing in the record of this case which indi-

103

cates that the amounts which she advanced exceeded those of Alvin Schultz.

At the time that the foreclosure proceeding and evidence thereon was heard by the master, Alvin was no longer alive. He died in May of 1963, and the foreclosure proceedings before the master began in February of 1964. Therefore, there was no evidence presented on his behalf to show what contributions he had made to the premises. Since Mary has not shown that her advancements exceeded those of her former husband, and since both parties had an equal interest in the trust, we hold that Mary is not entitled to an equitable lien upon the premises or upon the half interest of Alvin in the trust.

Assuming that Mary had proven that the amounts which she had advanced exceeded those of her cotenant, she would still not be entitled to an equitable lien since the facts of the case reveal that Mary had waived any right which she may have had to assert said lien.

In her complaint for divorce, filed after the alleged contributions were made, Mary asked that she be awarded the entire realty held in joint tenancy by the parties at 1046 Lathrop Ave., River Forest, Illinois. She alleged that it had been acquired through the joint efforts of her and Alvin.

The property at the time of the divorce was held under a land trust, and Mary and Alvin owned the certificates of beneficial interest in said trust. Apparently this was not called to the attention of the trial judge, who entered the divorce decree which contained no reference to the land trust. This factor is immaterial to the decision of this appeal, since the court found the interest of Mary to be one-half.

In the decree of divorce entered by the court, it was adjudicated that Mary was entitled to one-half of the net proceeds of the sale of the property. The power of the divorce court to decide the interest of each party in the property is derived from section 18 of the Di-

104

vorce Act (c 40, § 18, Ill Rev Stats 1959.) This section gives the court the authority to determine the property rights of the parties in a divorce action.

This decree, which determined that the interest of Mary in the property amounting to one-half, was approved by her personally. The adjudication by the court, and the subsequent approval by Mary, amounted to a final determination of Mary's interest in the premises. ■ Since Mary asked for the entire premises, and the court decided that she had only a one-half interest, she cannot now claim any additional interest in the premises. She is now estopped from attempting to claim an equitable lien for contributions made by her prior to the divorce decree.

Though the decree provided that the property should be sold, and the proceeds divided evenly, this was not done. Instead, Mary and Alvin changed their interests under the trust from that of joint tenants to that of tenants in common, with each possessing a 50% interest. Subsequently, Mary came into the divorce court and asked that a judgment be entered in her favor against Alvin for alimony and child support payments which were in arrears, and for payments she had made on the existing mortgage all of which accrued after the divorce decree. The judgment was entered and the court then entered an order which recited that it modified the prior decree for divorce, and further ordered that Alvin should execute and deliver to Mary an assignment of his beneficial interest under the land trust. This assignment was made by Alvin, and the modified divorce decree was thereby complied with. As previously pointed out, this assignment was ineffective under the terms of the trust agreement because it was not delivered to the trustee until after Alvin's death; also, Alvin's interest was already subjected to the lien of the Bank of Lyons by the filing of a creditor's bill by the bank, as will hereafter be pointed out. This modification in no way

105

changed the prior decree of the court insofar as it determined that each party had a one-half interest in the property.

We hold that since the court in the divorce action adjudicated the extent of Mary's interest and Mary approved the divorce decree, she waived her right to assert an equitable lien against her husband's interest at a later date; she is now estopped from asserting such a lien against the judgment creditor of her husband, the Bank of Lyons.

Mary Schultz, as beneficiary of one-half of the land trust, is entitled to one-half of the surplus of the sale, being the amount of $4,440.74.

The Bank of Lyons claims the entire $8,881.48 based upon its judgment lien obtained against Alvin Schultz, and upon an equitable lien which attached upon the filing of its creditor's bill.

As a preface to the determination of the rights of the bank, it is important to state the law relating to beneficial interests under an Illinois land trust. As the facts reveal, the only interest of Alvin at the time that the judgment of the bank was entered against him was an undivided one-half interest as a tenant in common under the land trust. Hence, the rights of the bank necessarily must be considered in the light of Alvin's interest in the trust.

The trust res was real estate. However, the interest of Alvin as beneficiary of the land trust was personal property. (Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank, 300 Ill App 329, 20 NE 2d 992; Seno v. Franke, 20 Ill2d 70, 169 NE2d 335; Robinson v. Chicago Nat. Bank, 32 Ill App2d 55, 176 NE2d 659; Chicago Federal Savings & Loan Ass'n v. Cacciatore, 33 Ill App2d 131, 178 NE2d 888.) The beneficiary of a land trust has no interest, either legal or equitable, in the real estate held in the land trust. The provision of the trust agreement in the instant case, which deter-

106

mines the rights of the beneficiaries to the trust, provides that:

> ". . . no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails, and proceeds . . ."

Further, said trust agreement provides that "such right in the avails of said property shall be deemed to be personal property . . ."

The Illinois statute with respect to the liens of judgments against real estate states: ". . . the judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained . . ." (Ill Rev Stats 1963, c 77, § 1.) Section 3 of the same chapter recites that: ". . . 'real estate,' when used in this act shall include land, tenements, hereditaments, and all legal and equitable rights and interest therein and thereto . . ."

■ Since the only interest of a beneficiary under a land trust is considered to be personal property, a judgment cannot attach to such interest. The Illinois Statute relating to judgments against real estate specifically states that a judgment is a lien on real estate. It makes no mention of personal property, nor of the interest of a beneficiary under a land trust.

The court in the Cacciatore case, supra, commented upon this point and stated at page 142 of the opinion: "In passing, we might say that the attachment of a lien to an abstract right considered in a void, as it were, would be fruitless. By definition a lien must be found to attach to *property* or rights to *property*." In the case of Chicago Title & Trust Co. v. Mercantile Bank, supra, the court specifically held that since the interest of a trust beneficiary was personalty, a judgment did not

107

create a lien upon the real estate held under a land trust.

Nevertheless, the Bank of Lyons contends on appeal that a judgment constitutes a lien against a beneficial interest in a land trust, and cites the case of Johnson v. Watson, 309 Ill App 440, 33 NE2d 130, to sustain its position. In that case the owner of property conveyed it to a bank under a trust agreement whereby one-half of the earnings, avails and proceeds was for the benefit of the grantor's son during his life and the other half for the benefit of the grantor's daughter. The bank was to deal with the property only when authorized to do so in writing by the beneficiaries. The bank had no duties to perform and the beneficiaries were to manage the property. Subsequently the bank reconveyed the property to the original grantor on the beneficiaries' request. The court held that the beneficiaries' interest in the property was subject to liens of judgments acquired during the time the bank held the title and the reconveyance to the grantor by the bank did not affect such liens.

Both defendants, however, have misconstrued the facts of that case. Though the court held that a judgment constituted a lien against the beneficial interest under a land trust, it did so only under the facts of the case which reveal the filing of a complaint in the nature of a creditor's bill.

Section 49 of the Chancery Act (Ill Rev Stats 1961, c 22, § 49) states:

> "Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a complaint against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging

to the defendant, and of any property, money, or thing in action due to him, or held in trust for him, and to prevent the transfer of any such property, money or thing in action, or the payment or delivery thereof to the defendant, except when such trust has, in good faith been created by, or the fund so held in trust has proceeded from some person other than the defendant himself. The court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgments, out of any personal property, money or things in action, belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not; Provided, that no answer made to any complaint filed under this and the preceding section shall be read in evidence against the defendant on the trial of any indictment for fraud charged in the complaint."

■■ Therefore, in the present case the filing of a creditor's bill resulted in a lien upon the beneficial interest owned by the judgment debtor. (Thomas v. Richards, 13 Ill2d 311, 148 NE2d 740.) Subsequent to the filing of the creditor's bill by the Bank of Lyons, Alvin attempted to assign his interest under the trust to Mary pursuant to the order of the divorce court. This assignment was subject to the lien of Alvin's creditor, the Bank of Lyons, since Alvin's interest under the trust had already become impressed with a lien in favor of the bank.

Therefore, the Bank of Lyons became entitled to a lien upon the one-half interest of Alvin Schultz under the land trust, which now has been reduced to cash as a result of the foreclosure sale.

109

The last point that must be discussed relates to the determination by the trial court that Mary Schultz was entitled to an estate of homestead in the premises in the statutory amount of $2,500. This was error by the court, and this determination must be reversed.

The issue presented here is whether an estate of homestead exists by virtue of a beneficial interest in a land trust. As previously shown, the only interest which either Mary or Alvin had was a 50% undivided interest as tenants in common under the land trust in which title to the premises was held.

Two federal cases which concerned the question of homestead by virtue of a beneficial interest in a land trust do not aid us in the instant appeal. In the case of In re Sjostrom, 338 F2d 676 (7th Cir), the facts reveal that the person holding the beneficial interest under a land trust had expressly released and waived his homestead estate in his conveyance to the trustee bank. Similarly in Jones v. Bank of Lincolnwood, 329 F2d 360 (7th Cir), a husband and wife tried to claim a homestead estate in land held under a trust, contending that the trust deed was invalid. The court of appeals denied their claim since it found the trust deed to be valid and that the parties had waived their homestead interests in the property in the deed in trust. Both of these cases involved situations where the party claiming the homestead had previously waived the homestead in the deed placing the land into the trust.

In the instant case, the Schultzes did not convey the premises into the trust. They acquired their interest in the trust by an assignment from previous holders of the beneficial interest in the trust. Therefore, there was no specific waiver of homestead by the Schultzes. In the cases of Sjostrom and Jones, supra, the courts did not consider the question of whether the beneficiaries of a land trust are entitled to a homestead estate. The cases did not decide the question whether the parties

there would have had a homestead if the homestead had not been expressly waived in the deed in trust.

The Schultzes did not personally waive the homestead since they did not convey the land into the trust. Therefore, it is necessary to determine the question of homestead solely on the facts of the instant case.

Mary contends that she has a homestead in the premises under chap 52, sec 1, of the Ill Rev Stats (1963) which provides:

> "Every householder having a family, shall be entitled to an estate of homestead, to the extent in value of $2,500, in the farm or lot of land and buildings thereon, owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence; and such homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution, sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided."

■ Admittedly Mary is a householder, does have a family, and was in possession of the residence. She cites several cases to sustain her right of homestead which hold that the holder of a possessory interest in land may invoke the aid of the statute, without regard to the extent of his title. (Cf. Feldes v. Duncan, 30 Ill App 469 (1888); Watson v. Saxer, 102 Ill 585 (1882).) However, Mary has no title, and as these cases indicate, some title, no matter what its extent, is necessary to sustain a homestead estate. Further, the facts of the Watson case, upon which Feldes relies, reveal that the premises there were occupied by the possessor under either a lease or as a purchaser, and in either event the possessor fell within the provisions of the Homestead Act. The court there specifically found that the person claiming the homestead had some type of title.

Later cases also indicate that something more than mere possession is required to entitle a party to a homestead estate. In DeMartini v. DeMartini, 385 Ill 128, 52 NE2d 138 (1944), the court stated at page 36: "The right of homestead being by our present statute enlarged into an estate, it follows that like all other estates, it can have no separate existence apart from the title on which it depends. We have held that the estate of homestead created by the statute is based upon the title of the householder, and can have no separate existence independently of the title, which constitutes one of its essential elements, and from which it is inseparable." (Kitterlin for Use of Swanson v. Milwaukee Mechanic's Mut. Ins. Co., 134 Ill 647, 25 NE 772; Browning v. Harris, 99 Ill 456; Tink v. Walker, 148 Ill 234, 35 NE 765; Roberson v. Tippie, 209 Ill 38, 70 NE 584.)

In Jones v. Kilfether, 12 Ill App2d 390, 139 NE2d 801, the plaintiff admitted that title to certain property was in his wife and her brother as tenants in common. He claimed a homestead right in the premises because of mere possession. The court denied his claim of homestead and stated at page 396: ". . . since, under the rule heretofore enunciated, the right of homestead can have no separate existence independently of the title which constitutes one of its essential elements and from which it is inseparable, he has no right of homestead . . ." It is apparent from a reading of these cases that some type of title is required to sustain a right of homestead. It is not necessary that a householder have a fee title upon which to predicate his homestead estate, but one must have some right in the property to which a homestead may attach. (Rice v. United Mercantile Agencies of Louisville, Ky., 395 Ill 512, 70 NE2d 618.)

██ In the instant case, Mary, as beneficiary under the land trust, merely had possession of the premises. She had no right in the property, nor did she have any title or interest therein. As the provisions of the trust

agreement state: ". . . no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable. . . ." Therefore, Mary is not entitled to a homestead estate based upon naked possession, without any title or right in the real estate.

■■■ Further, the provisions of the trust agreement state that the only interest of a beneficiary is in the earnings and avails of the property, and such interest is considered to be personal property. By the very nature of the homestead estate, it cannot exist in personal property. The Homestead Act, section 1, specifically provides that a homestead attaches only to the "farm or lot of land and buildings thereon." Nowhere in the statute is personal property mentioned. In order to set off a homestead to Mary, we would have to set it off in personal property, since this was the only interest which she possessed. This we cannot do. In the case of Gahan v. Golden, 330 Ill 624, 162 NE 164, the court considered the question of whether an estate of homestead may attach to personal property and concluded: "A widow may have a homestead in the real estate devised to her if the facts show that she is entitled to such an estate, but she is never entitled to a homestead in personal property."

The decree of the trial court is reversed and the cause remanded with directions to enter a decree dividing the $8,881.48, being the excess from the sale, in the following manner: one-half to Mary Schultz, who by virtue of her certificate of beneficial interest in the land trust became entitled to receive the "proceeds from rentals and from mortgage, sale or other disposition of said premises . . ." to the extent of her interest in the trust as set forth in the trust agreement; one-half to the Bank of Lyons whose judgment became a lien on the one-half interest of Alvin Schultz by virtue of the creditor's

bill heretofore filed prior to the attempted assignment of Alvin's one-half interest to his former wife.

Reversed and remanded with directions as above set forth and such other and further proceedings as are not inconsistent with the views expressed herein.

Reversed and remanded with directions.

SCHWARTZ and DEMPSEY, JJ., concur.