MARK F. CARLYLE, Plaintiff and Counterdefendant-Appellant, *v.* ADELINE JASKIEWICZ, Defendant and Counterplaintiff-Appellee.

First District (5th Division)   No. 83—605

Opinion filed May 18, 1984.

Donald S. Rothschild, of Oak Park, for appellant.

Sidney Z. Karasik, of Chicago, for appellee.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an action for an accounting of amounts allegedly due as between cotenants under a land trust upon partition sale of the property. On appeal, plaintiff contends that the trial court erred in (a) imposing an equitable lien against his share of the proceeds of the sale for expenses incurred prior to the date on which he acquired that interest; and (b) excluding evidence offered to support alternative theories with regard to the proper accounting period.

The parties herein are the son and daughter of Catherine Ciolek, and the property which is the subject matter of this controversy, a two-flat apartment building at 1936 Warner Avenue in Chicago, was originally acquired by plaintiff and Mrs. Ciolek in 1952. Title was vested at all times pertinent hereto in La Salle National Bank, as trustee under trust No. 14424 (the land trust). Plaintiff and Mrs. Ciolek occupied the second-floor apartment until 1958, when he moved out and transferred his interest in the land trust to her. Mrs. Ciolek continued to reside in the second-floor apartment until late 1978 or early 1979; defendant occupied the first-floor apartment from 1967 until the property was sold in 1981.

Mrs. Ciolek remained the sole beneficial owner of the land trust

until April 1968, when she conveyed a 50% interest therein to defendant. Thereafter, in September 1970, Mrs. Ciolek executed a document which transferred to defendant the remaining 50% beneficial interest in the land trust, subject to a life estate in herself. However, Mrs. Ciolek subsequently asserted that she had no knowledge of the true nature of that document, maintaining that it was her understanding that it merely provided a tax benefit to defendant, and that it was never her intention to transfer the remaining 50% beneficial interest to defendant. In 1973, Mrs. Ciolek filed an action seeking to set aside the 1970 assignment on the ground that defendant breached her duties as a fiduciary, and the trial court therein found that a fiduciary relationship existed; that Mrs. Ciolek, who was then 78 years old and had substantial difficulty with the English language, did not understand the nature of the transaction; and that defendant had not rebutted the presumption that the transaction was fraudulent, since she failed to prove that she did not breach her fiduciary duty to make free and frank disclosure of all relevant information concerning the nature of a transaction in which she profited. Mrs. Ciolek was restored to ownership of a 50% beneficial interest in the land trust, and that decree was affirmed by this court in *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914.

It is now undisputed that from late 1972, when she first learned of the purported transfer of her 50% interest, until she vacated her apartment in late 1978 or early 1979, Mrs. Ciolek refused to pay any portion of the mortgage, taxes, or maintenance and repair expenses on the subject property; as a result, all of those expenses were paid by defendant. In January 1977, Mrs. Ciolek assigned her 50% beneficial interest to plaintiff, and it appears that he, too, failed to make any contribution toward the mortgage, taxes, or maintenance and repair expenses until ordered to do so by the court. Plaintiff initiated the instant action in 1978, seeking partition of the property and an accounting, and defendant counterclaimed against him and Mrs. Ciolek, seeking contribution for their share of the expenses paid by her. Thereafter, plaintiff amended his complaint, adding Mrs. Ciolek as a plaintiff in the action for an accounting. It appears, however, that Mrs. Ciolek died sometime in 1980, and neither party sought to substitute her personal representative as either plaintiff or counterdefendant.

On September 21, 1981, the property was sold pursuant to the request for partition, and no questions are raised concerning the propriety of granting partition or the manner in which the property was sold. The proceeds were placed in escrow pending a final resolution of

the parties' actions for an accounting, and the trial court established an accounting period of January 1, 1972, to the date of sale. That period was originally set by order of the court on March 2, 1981, but the order recites no reasons for the period chosen, and apparently no transcript was made of any proceedings before the court at that time. Subsequently, in an October 28, 1982, order entered *nunc pro tunc* as of March 2, 1981, the trial court stated:

"The Carlyles contend that they have credits coming dating back to 1967 claiming that Mrs. Ciolek paid the mortgage and that Adeline Jaskiewicz paid nothing and it is the contention of the Jaskiewicz's that no credit should be considered prior to 1972.

The parties by and through their attorneys agreed that the threshold question to be decided was whether or not to start with 1967 or 1972 in applying credits.

It was agreed that this Court should read:

a) the opinion handed down by the Appellate Court in Ciolek v. Jaskiewicz \*\*\*;

b) the excerpts from the record filed in said case;

c) the transcript of Catherine D. Ciolek's deposition taken on the 23rd day of August 1973, in case 73 Ch 935 and;

d) read the brief filed by the defendant appellant in [Ciolek v. Jaskiewicz].

The Court has reviewed all of the aforementioned matters carefully and the Court comes to the following conclusion:

That the last conveyance made giving one-hundred per cent (100%) of the property to Jaskiewicz was set aside by order of court, thereby giving Catherine D. Ciolek fifty per cent (50%) beneficial interest and Adeline B. Jaskiewicz fifty per cent (50%) interest; and that from the testimony elicited from Catherine D. Ciolek in her deposition and from reading the excerpts from the record filed in the Appellate Court; the Court further finds Adeline B. Jaskiewicz did in fact pay her share toward the payment of the mortgage on the property in question and that this court is duty bound to rule that credits prior to 1972 will not be considered."

After hearing evidence concerning the parties' contributions toward the upkeep, repair and maintenance of the building from January 1, 1972, through September 1981, including real estate taxes, payment of the mortgage, insurance, water, gas and electric bills for the common elements, and land trustee fees, the trial court ordered that defendant's share of the proceeds be increased by a credit of

$15,012.24, and that plaintiff's share be reduced by that amount. No questions are raised concerning the factual accuracy of that finding. The trial court further ruled that "[a]ny payments made by *** Catherine Ciolek, from 1952 through December 1971, are outside the accounting period *** and are irrelevant and immaterial to any issue in this cause"; and that "[m]ortgage payments in 1972 made by check signed by Ciolek were based on cash contributions made by [defendant]." This appeal followed.

OPINION

Plaintiff first contends that while it is true defendant expended $31,937.86 on the upkeep, repair and maintenance of the property, she was entitled to no contribution from him for any expenditures made prior to 1977, when their mother assigned her 50% beneficial interest to him. He acknowledges that joint tenants are equally liable for the cost of necessary repairs, as well as the payment of any mortgage and real estate taxes (*Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 328 N.E.2d 562), but asserts that there is no theory upon which he may be found jointly liable for expenditures made when he had no interest in the property. He cites no cases supporting this position, but reasons that, since one who has no joint interest may not seek an accounting (*Patterson v. Johnson* (1885), 113 Ill. 559), an obvious corollary is that one who has no interest may not be held to account.

The only rationale set forth for the trial court's determination that defendant was entitled to credits for expenditures made prior to 1977, was that plaintiff was an heir of Mrs. Ciolek and therefore "stood in line to gain" from those payments. Plaintiff asserts, and defendant conceded in oral argument, that this theory does not support the court's ruling, since both plaintiff and defendant were heirs of Mrs. Ciolek. It is true that an heir of a deceased cotenant stands in the same position as the deceased with regard to equitable liens for contribution (see, *e.g., Burkholder v. Burkholder* (1956), 10 Ill. App. 2d 565, 135 N.E.2d 504; *Paidle v. Hestad* (1976), 169 Ind. App. 370, 348 N.E.2d 678); however, cases so holding are irrelevant under the facts of this case, since the property did not pass to plaintiff by inheritance—Mrs. Ciolek assigned her interest to him. Of course, it can be said that plaintiff, as assignee, benefited by defendant's expenditures in preserving and maintaining the property; however, the material question here, and one apparently not raised by either party before the trial court, is whether plaintiff, as assignee of a tenant in common, must contribute toward expenses incurred during the assignor's period of tenancy. We shall consider this question, despite the parties'

failure to address it, since we are not bound by the trial court's rationale on appeal; our concern is whether its ruling was proper, and we may affirm a correct decision for reasons other than those relied upon by the trial court and regardless of its reasoning. *U-Haul Co. v. Town of Cicero* (1980), 87 Ill. App. 3d 915, 410 N.E.2d 286.

It has frequently been stated that an assignee is placed "in the shoes of" his assignor; that is, that he acquires the same rights as his assignor (*Buck v. Illinois National Bank & Trust Co.* (1967), 79 Ill. App. 2d 101, 223 N.E.2d 167), but can have no greater rights than the assignor (*Town & Country Bank v. James M. Canfield Contracting Co.* (1977), 55 Ill. App. 3d 91, 370 N.E.2d 630). Similarly, with regard to cotenants, courts have reasoned that "[t]he grantee or successor of *** a co-tenant simply steps into the shoes of his grantor, subject to all the rights of the other co-tenants and their successors as to partition." (*Shoup v. Cummins* (1929), 334 Ill. 539, 545, 166 N.E. 118, 121.) However, those cases were concerned either with the rights of a nonassigning cotenant *vis-a-vis* the assignee of a portion of another cotenant's interest where that cotenant purported to assign a specific part of the property when he held only an undivided interest in the whole (*e.g., Nicklaus v. Daubs* (1944), 385 Ill. 407, 52 N.E.2d 786), or the assignee's right of contribution as against his cotenants (*e.g., Fischer v. Eslaman* (1873), 68 Ill. 78). It appears that no Illinois court has had occasion to address the question of a cotenant's right to contribution as against the assignee of an interest for unreimbursed expenditures incurred prior to the assignment. For this reason, we have consulted the rulings of courts in other jurisdictions for guidance on the issue.

■ It is the almost universal rule in jurisdictions that have considered the question that only a *bona fide* purchaser without notice of existing equities between or among cotenants takes an interest free of those preexisting equitable claims upon partition of the jointly held property. (See *Bowman v. Pettit* (1900), 68 Ark. 126, 56 S.W. 780; *Palpar, Inc. v. Thayer* (1953), 115 Cal. App. 2d 333, 252 P.2d 51; *Sawyer v. Powell* (1973), 230 Ga. 309, 196 S.E.2d 882; *Norwood v. Parker* (1929), 208 Iowa 62, 224 N.W. 831; *Dietsch v. Long* (1942), 72 Ohio App. 349, 43 N.E.2d 906; *Kirby Lumber Co. v. Temple Lumber Co.* (1935), 125 Tex. 284, 83 S.W.2d 638.) Some courts have predicated their decisions on the necessity of protecting innocent third parties. For example, in *Dietsch v. Long* (1942), 72 Ohio App. 349, 371, 43 N.E.2d 906, 916-17, the court noted:

> "As applied to the equitable claims of the defendants [who sought contribution] this seems to be a harsh rule, but it must

be remembered that such equitable claims do not constitute liens on the premises but only rights to have liens decreed on a cotenant's interest in a partition proceeding for the protection of their respective claims against such cotenant; that each of the defendants, at any time before plaintiff acquired his interest in the premises as a *bona fide* purchaser for value without notice, could have instituted an action in partition and had the interest which the plaintiff afterwards acquired in the real estate subjected to their various equitable claims; and that it was their failure to do so that make it possible for the plaintiff to acquire such interest free from such claims, bringing the case within the general rule that 'wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.' [Citation.]"

Other courts have reasoned that a rule which allowed recovery from a *bona fide* purchaser without notice of the equities would seriously impari the value of an interest held in cotenancy. For example, in *Palpar, Inc. v. Thayer* (1953), 115 Cal. App. 2d 333, 337, 262 P.2d 51, 53, the court stated:

" 'Such liens would be indefinite in amount, and undisclosed by public records, upon which third parties, in dealing with the owners of property, ordinarily have a right to rely. They would greatly injure tenants in common by impairing the market value of their shares and interest, because of the apprehension, on the part of those contemplating purchasing such interest or otherwise dealing with them, that claims for rents might be established as superior liens.' "

We find the reasoning of these cases persuasive, noting that they are in harmony with the long-standing policy of Illinois cases in affording protection to innocent third persons (see, *e.g., Smith v. Herdlicka* (1926), 323 Ill. 585, 154 N.E. 414), as well as the accepted principle that a *bona fide* purchaser takes free and clear of any interest in property except those of which he has notice (*Kovacevic v. City of Chicago* (1977), 47 Ill. App. 3d 674, 365 N.E.2d 104). Therefore, we hold that only a *bona fide* purchaser without notice of existing equities takes his interest free of any equitable claims for contribution which arose prior to the assignment.

■ Of course, the question whether plaintiff was a *bona fide* purchaser without notice of any outstanding equities between his assignor and the cotenant is one of fact. Since the issue was not raised before the trial court, we would ordinarily remand the cause for the

purpose of an evidentiary hearing on that point. However, in the instant case, plaintiff in his brief on appeal stated that Mrs. Ciolek gave him her 50% interest in the property. It further appears from the rather limited transcript of proceedings before the trial court in the record on appeal that plaintiff had full knowledge of the transactions between defendant and Mrs. Ciolek, including the fact that Mrs. Ciolek paid none of the reasonable expenses on the property from late 1972 until she assigned the interest to him. We therefore see no purpose to be served by further evidentiary hearings. Accordingly, we find that plaintiff was not a *bona fide* purchaser without notice of the existing equities between defendant and Mrs. Ciolek, and under those circumstances, the trial court properly ruled that contributions owed by his assignor were chargeable against his share of the proceeds from the partition sale.

Plaintiff further asserts, however, that defendant's only recourse in seeking reimbursement for the expenditures made prior to 1977 was an action against Mrs. Ciolek's estate, positing that, since an interest in a land trust is considered personal property, no equitable lien could have attached to that interest. We believe that plaintiff misapprehends both the law regarding interests in land trusts and the nature of equitable liens.

In support of his position, plaintiff cites *Chicago Federal Savings & Loan Association v. Cacciatore* (1961), 33 Ill. App. 2d 131, 178 N.E.2d 888, and *Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank* (1939), 300 Ill. App. 329, 20 N.E.2d 992. Those cases concerned whether the beneficial interest in a land trust could be considered personal property for purposes of statutes granting tax liens against interests in real property (*Chicago Federal Savings & Loan Association v. Cacciatore*) or providing that a judgment shall be a lien on the real estate of the person against whom it was obtained (*Chicago Title & Trust Co. v. Mercantile Trust & Savings Bank*). The sole issue therein was the nature of the interest held, and neither case held—as plaintiff apparently assumes—that beneficial interests are "lien-proof," and we have affirmed imposition of a lien against the beneficial interest in a land trust under appropriate circumstances. *Sterling Savings & Loan Association v. Schultz* (1966), 71 Ill. App. 2d 94, 218 N.E.2d 53.

.■ Furthermore, it is our view that the term "equitable lien" is somewhat misleading, and that cases involving legal or statutory liens are inapplicable to situations in which a court imposes an equitable lien. There are two situations under which such liens arise, and their origin and nature was thoroughly discussed in *Oppenheimer v. Szu-*

*Ierecki* (1921), 297 Ill. 81, 87-88, 130 N.E. 325, 327. There, the court first discussed equitable liens which arise when parties express in writing their intention to make some particular property, real or personal, or some fund, the security for a debt, or where there has been a promise to convey or assign the property as security. The court went on to note:

> "This rule is not, however, limited to express contracts, for 'in addition to the general doctrine that equitable liens are created by executory contracts which in express terms stipulate that property shall be held, assigned or transferred as security for the promisor's debt or other obligation, there are some further instances where equity raises similar liens without agreement therefor between the parties, based either upon general considerations of justice *** or upon the particular equitable principle that he who seeks the aid of equity in enforcing some claim must himself do equity.' [Citation.] Illustrations of equitable liens so declared are cases where two or more persons own real estate in common and one of them has made permanent improvements on the property which have added to its value. Upon partition of the estate a court of equity will allot to the co-tenant making the improvement the portion improved without taking account of its value, but if such division cannot be made will create a lien upon the proceeds of the other shares for their proportionate amounts of the increased value caused by the improvement. [Citations.]" (297 Ill. 81, 87-88.)

Thus, in a suit for partition, a court of equity takes jurisdiction to do complete justice between the parties (*Shippert v. Shippert* (1939), 371 Ill. 267, 20 N.E.2d 597), and one of the remedies available to it, should the equities so require, is imposition of an equitable lien *upon the proceeds of the partition sale* in favor of a party seeking contribution. The equitable lien, then, does not arise when the funds are expended, and does not constitute a lien at law on a cotenant's interest; it is a remedy which can be imposed by a court, sitting in equity, against the cotenant's interest which will be satisfied out of the proceeds of sale. In effect, the lien is not upon the interest, but upon the proceeds. For this reason, we believe that it is immaterial, for purposes of an equitable lien upon partition, how the property was owned, and that cases considering the imposition of legal or statutory liens on beneficial interests under a land trust are irrelevant to the facts of this case.

■ Defendant next contends that the trial court erred in excluding evidence (a) of his interest in the property from 1952 to 1958, and

his lack of interest therein from 1972 to 1977; (b) of expenditures made by him and by Mrs. Ciolek during those periods; and (c) of defendant's "unclean hands."

With regard to exclusion of evidence concerning ownership of the property, we note that the court's sole basis in so ruling was that it had taken judicial notice of the facts contained in *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914, which set forth the history of ownership from 1952 to 1976. Plaintiff does not assert that those facts are inaccurate, and it does not appear that there has ever been any dispute over who held the interests in the land trust at all relevant times. Moreover, the record is clear that plaintiff acquiesced to this manner of placing the facts before the court; therefore, he cannot now maintain that the court's ruling was erroneous. In addition, even if the evidence should have been admitted, the failure to do so was harmless, since the facts establishing ownership were otherwise before the court. See *Society of Mount Carmel v. Fox* (1980), 90 Ill. App. 3d 537, 413 N.E.2d 480.

Turning to plaintiff's allegations concerning expenditures made by him and by Mrs. Ciolek, we note that the trial court specifically found in its final order that this evidence was irrelevant to the issues before it. Of course, in determining relevancy, the court must consider the evidence in the light of the factual issues raised by the pleadings (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628), and it is not error to exclude testimony which does not bear on the specific issues under consideration (*Eleopoulos v. Dzakovich* (1981), 94 Ill. App. 3d 595, 418 N.E.2d 980). The determination of what is relevant is largely within the discretion of the trial court (*Ferdinand v. Yellow Cab Co.* (1976), 42 Ill. App. 3d 279, 355 N.E.2d 547), and reversal of its decision is not warranted absent an abuse of that discretion (*Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485).

■■ Plaintiff first asserts that the trial court should have admitted evidence regarding his expenses from 1952 to 1958, when he was a cotenant with Mrs. Ciolek. Unfortunately, plaintiff makes no attempt to explain the relevancy of this evidence; presumably, it is his position that he was entitled to credits for those expenses in establishing the accounts between the parties, but he argues no theory and cites no cases which would support his claim for contribution. If his theory is that defendant is the assignee of Mrs. Ciolek's 50% beneficial interest and, as such, is liable as an assignee of a cotenant for contributions, we note that after the expenses in question were incurred, the cotenancy between plaintiff and Mrs. Ciolek ceased to exist. It does not ap-

pear that plaintiff sought any accounting prior to conveying his interest to Mrs. Ciolek. Thus, when a 50% interest was assigned to defendant in 1968, Mrs. Ciolek was the sole beneficial owner of the land trust; it cannot be said, then, that defendant was the assignee of Mrs. Ciolek's original cotenancy interest—there was no cotenancy at the time of the 1968 transfer. Moreover, even assuming, *arguendo*, that despite the transfer of his beneficial interest to Mrs. Ciolek, plaintiff would be entitled to contribution for expenses paid during the period in question, the evidence contained in his offer of proof would not support an equitable lien for contribution. A cotenant is entitled to a lien only to the extent that his expenditures exceeded the proportionate amount owed by him. (*Sterling Savings & Loan Association v. Schultz* (1966), 71 Ill. App. 2d 94, 218 N.E.2d 53.) Here, the offer of proof, consisting of a bundle of cancelled checks, shows only that plaintiff made payments; we assume payments concerning the property, although there is nothing in the offer of proof that would so indicate. Plaintiff has not alleged, nor does the offer of proof show, that these payments represent expenditures in excess of his fair share of expenses as a cotenant. Under these circumstances, we do not believe that the trial court abused its discretion in excluding the evidence in question.

Plaintiff also maintains that the trial court erred in excluding evidence of expenses paid by Mrs. Ciolek from 1968 through 1971, during her cotenancy with defendant and prior to her refusal to bear any of the expenses. According to the trial court's order entered *nunc pro tunc* as of March 2, 1981, exclusion of that evidence was based on Mrs. Ciolek's deposition and certain excerpts from the record in *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914, which the parties submitted as evidence on the issue. Plaintiff, who had the responsibility of providing a record which would enable us to resolve the issues raised (*City of Chicago v. Hutter* (1978), 58 Ill. App. 3d 468, 374 N.E.2d 802), failed to include either the deposition or the excerpts specified in the trial court's order, claiming that they were not material to the issue. However, we can conceive of nothing which would have more relevance on appeal that the evidence upon which the trial court based its disputed ruling. While we have no way of determining the exact substance of that evidence, it appears from the wording of the trial court's order that the material in question contained some admission by Mrs. Ciolek that defendant paid her proportionate share of expenses during the period in question. Such admissions against interest appearing in a deposition (*Luthy v. Keehner* (1980), 90 Ill. App. 3d 127, 412 N.E.2d 1091) or testimony (*Bishop v.*

*Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599), even those made in a separate action (*Kellogg v. Bickford* (1917), 206 Ill. App. 76 (abstract of opinion)), are admissible not only against the declarant, but against assignees (*Household Finance Corp. v. Mowdy* (1973), 13 Ill. App. 3d 822, 300 N.E.2d 863) or others claiming under right of the declarant (*Lee v. Central National Bank & Trust Co.* (1974), 56 Ill. 2d 394, 308 N.E.2d 605). In any event, it is clear that, contrary to plaintiff's assertion, the trial court was not ruling as a matter of law that he was not entitled to contribution for payments made by Mrs. Ciolek; but, rather, that as a matter of fact, no contribution was owed because defendant had paid her proportionate share of expenses. If the evidence in fact so established, the trial court's exclusion of the evidence was proper since, as we previously stated, a cotenant has a claim for contribution only to the extent that his payments have exceeded his proportionate share of expenses. (*Sterling Savings & Loan Association v. Schultz* (1966), 71 Ill. App. 2d 94, 218 N.E.2d 53.) Without the facts before us upon which the trial court based its finding, we must assume that the evidence supported its ruling. See *Wade v. Gentle* (1981), 101 Ill. App. 3d 1042, 428 N.E.2d 1085.

▮▮ Finally, plaintiff asserts that the trial court should have admitted evidence purportedly establishing defendant's "unclean hands," maintaining that such evidence would have precluded any equitable claim for contribution. In particular, he contends that the trial court should have considered evidence with regard to defendant's acquisition of Mrs. Ciolek's 50% interest in 1970, and evidence that defendant breached an agreement to provide support for Mrs. Ciolek. He argues that this evidence, if received, would have barred—at least in part—defendant's counteraction for an accounting.

The misconduct of a party which will preclude recovery under the doctrine of "unclean hands" must have been conduct directed toward the party making the contention and involving the transaction before the court. (*David v. Russo* (1980), 91 Ill. App. 3d 1023, 415 N.E.2d 531.) Moreover, the purpose of the doctrine is to protect courts of equity in keeping with the policy that equity should not aid a wrongdoer; it is not to protect the party asserting it as a defense. (*Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393.) The doctrine is not favored by the courts, nor was it intended to prevent equity from doing complete justice between the parties (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 422 N.E.2d 1166), and its application is within the sound discretion of the trial court (*Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 408 N.E.2d 1069).

With regard to the transfer of Mrs. Ciolek's beneficial interest to defendant in 1970, it appears that the trial court was well aware of the facts of that transaction, having taken judicial notice of our opinion in *Ciolek v. Jaskiewicz*, but ruled that it did not establish defendant's "unclean hands" in the transaction before it. We agree that these were separate transactions, and the question whether the transfer was wrongfully obtained had no bearing on the question whether Mrs. Ciolek, having succeeded in being restored to a 50% ownership interest therein, was required to bear her proportionate share of the expenses as cotenant. Plaintiff has neither alleged nor shown that there was anything wrongful or fraudulent in defendant's payment of the expenses, or that she acted in bad faith in so doing, and we perceive no misconduct in a cotenant seeking contribution for reasonable expenses. In effect, what plaintiff demanded was that the trial court go beyond redressing Mrs. Ciolek's injury, which was accomplished by ordering restoration of her property interest, and punish defendant for her conduct by requiring her not only to return the improperly acquired interest, but to bear all of the expenses for which the wronged party was liable. We do not believe that the trial court abused its discretion in refusing to do so; it is the function of a court of equity to do justice, not to mete out punishment.

■ Plaintiff also asserts that defendant's recovery should be barred because she breached a promise to provide financial support for Mrs. Ciolek, allegedly made in exchange for an assignment of a 50% beneficial interest in the land trust. It is somewhat unclear which assignment plaintiff refers to, since in his initial brief he asserts that the promise was made in conjunction with the 1970 transfer,[1] while in his reply brief he maintains that the obligation was consideration for the 1968 transfer. In either case, we agree with the trial court that the alleged breach of this agreement was immaterial to the transaction before it. Assuming *arguendo* the existence of the agreement and breach thereof by defendant, any misconduct on her part affected Mrs. Ciolek, not plaintiff. Had defendant brought an action for an accounting against Mrs. Ciolek, seeking contribution, it is true that the agreement might have been a defense, not as a showing of "unclean hands," but as proof that no contribution was owed. It is apparently plaintiff's theory that the defense is also available to him; however, he

---

[1] We note that this argument would likely be precluded by the adjudication in *Ciolek v. Jaskiewicz* (1976), 38 Ill. App. 3d 822, 349 N.E.2d 914, that Mrs. Ciolek did not understand the nature of the 1970 transfer and had no intention of assigning her interest to defendant.

was not a third-party beneficiary of the alleged agreement, and we do not believe that Mrs. Ciolek's transfer to him of a 50% beneficial interest in the land trust operated either as an assignment to him of the benefits due her under the agreement or as an assignment of her cause of action for breach of contract. In sum, any rights which Mrs. Ciolek may have had arose from the contractual relationship with defendant, not from the cotenancy relationship, and the only issue before the court in the instant case was the parties' rights and obligations as cotenants.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.