2020 IL App (1st) 200125-U

FIFTH DIVISION
Order filed: September 30, 2020

No. 1-20-0125

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| CATHERINE WALLACE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2018 OP 30812 |
| | ) | |
| ADAM EVANS, | ) | Honorable |
| | ) | Samuel J. Betar, III |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Cunningham and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirm the circuit court's judgment denying the petitioner's petition for a plenary order of protection against the respondent.

¶ 2     The petitioner, Catherine Wallace, appeals from the circuit court's denial of her petition for a plenary order of protection against the respondent, Adam Evans. On appeal, Catherine argues that the circuit court erred in ruling that Adam did not abuse her during their relationship. She also argues that the circuit court erred in excluding evidence regarding the parties' finances and Adam's access to firearms. For the following reasons, we affirm.

¶ 3    The following factual recitation is adduced from the pleadings, orders, and testimony of record. Catherine and Adam began dating in July 2012, lived together at her parents' home from 2012 to 2017, and the relationship ended in 2018. On October 10, 2018, Catherine filed a petition for a plenary order of protection against Adam, alleging that she feared he might hurt her. Specifically, she maintained that, during their relationship, he abused her sexually, physically, and emotionally, that he refused to repay the $10,000 he charged to her credit cards, that he was calling her and sending her text messages despite her requests that he stop, and that he owned and had access to over 30 firearms, which increased her fear that he might "do something" to her.

¶ 4    The hearing on the petition commenced on August 23, 2018, and spanned several days. The evidence presented therein can be summarized as follows. During Adam and Catherine's relationship, the parties engaged in a sexual relationship in which Catherine assumed a submissive role and Adam assumed a dominant role. Catherine testified that Adam was violent and exerted control over her in the relationship, including: forced vaginal intercourse; anal intercourse; choking, punching, suffocation; using names such as "pet," "slave," and "sub[1]"; video surveillance; Adam forcing her to cut herself; restricting her from spending time with friends; demanding her to send him sexually explicit photos of herself; and Adam forcing her to create a joint bank account in which she was required to deposit funds, including her disability refund from the federal government. According to Catherine, Adam initiated the bondage and discipline, dominance and submission, sadism, and masochism (BDSM) sexual relationship, but she did not agree to it. She testified that, after certain of these sexually violent encounters, she was in physical pain and would express her displeasure with the behavior and her desire to terminate the relationship if it continued. However, the violent acts continued. Catherine stated that, although

---

[1] "Sub" is an abbreviated term for "submissive."

the sexual and physical violence persisted throughout their relationship, she did not report the abuse to anyone because Adam isolated her from her family and friends, and she did not end the relationship because he threatened to kill her if she did. Catherine testified that, in May 2018, Adam ended the relationship. She saw a psychologist and was diagnosed with PTSD. She stated that she still feared Adam would kill her.

¶ 5 Catherine stated that, in late August 2018, she contacted Adam requesting that he pay the $10,000 balance he charged to her credit cards. He promised to pay the balances but stopped doing so in August or September 2018. On October 7, 2018, Catherine transferred $439.16 from their joint account to her personal account because of Adam's refusal to repay the credit card charges. According to Catherine, Adam began calling and texting her, demanding that she return the money and threatening to report her to law enforcement and the Bureau of Alcohol, Tobacco, Firearms, and Explosives regarding two guns that he left in her possession. Catherine testified that she ignored Adam's calls and text messages and that she interpreted his text messages as angry and threatening. Consequently, she contacted the police and filed her petition for order of protection against Adam because she feared he would harm her.

¶ 6 Adam testified that the parties engaged in a consensual BDSM sexual relationship that included fictitious role-playing and levels of physical dominance, such as choking, but that at all times, Catherine was free not to engage in these activities. He also testified that Catherine was never injured during sex and that there was no violence, threats of violence, threats of injury, or degrading name-calling in their relationship. Adam admitted that he requested sexually explicit photographs from Catherine, but he also stated that she voluntarily took photographs and sent them willingly as well. Catherine also sent Adam handwritten love letters in which she referred to herself as "pet."

¶ 7    According to Adam, he added Catherine to his bank account because she did not have one, and by adding her to his account, she could use a debit card for her daily purchases instead of carrying cash. He testified that both parties freely deposited money into the account and made purchases against the account. Adam stated that no aspect of the BDSM relationship was financial and that Catherine was never forced to deposit money into their joint account. Adam acknowledged that he and Catherine shared joint credit cards and came to a repayment agreement on the debt on those cards, but he admitted that he stopped paying in August or September 2018.

¶ 8    Adam testified that his relationship with Catherine ended in March 2018. After the relationship ended and after he had deposited his paycheck into the joint checking account with Catherine, Catherine withdrew money from the account. Adam admitted that he sent a text message to Catherine, threatening to contact the police about the missing funds as well as her possession of guns that were registered to him; however, he never threatened her with physical harm. According to Adam, three days after his correspondence with Catherine, he was served with a petition for order of protection. He then transferred the 30 guns he owned, both for recreation and sport, to various individuals in order to comply with the petition.

¶ 9    On December 12, 2019, the court denied Catherine's petition for a plenary order of protection. In so doing, the circuit court reasoned that neither party was credible and that no abuse occurred. This appeal followed.

¶ 10    On appeal, Catherine first alleges that the circuit court erred in denying her petition by finding that Adam did not abuse her. We review the circuit court's finding of no abuse and its denial of a protective order, under the Illinois Domestic Violence Act, 750 ILCS 60/102 (Act) (West 2018), under a manifest weight of the evidence standard. *Best v. Best*, 223 Ill. App. 3d 342, 349-50 (2006). A circuit court's finding is against the manifest weight of the evidence only if the

opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on the evidence presented. *Id*. at 350. Under a manifest weight of the evidence standard, a reviewing court gives deference to the circuit court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and the witnesses and has a level of familiarity with the evidence that a reviewing court cannot have. *In re D.F*., et al., 201 Ill. 2d 476, 498-99 (2002). Therefore, we will not substitute our judgement for that of the circuit court regarding the credibility of the witnesses, the weight to be afforded the evidence, or the inferences to be drawn. *Id*. at 499.

¶ 11    Under the Act, "abuse" is defined as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation." 750 ILCS 60/103(1) (West 2018). "Physical abuse" includes, *inter alia*, "knowing or reckless use of physical force, confinement, or restraint," and "knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(14) (West 2018).

¶ 12    The circuit court found that the testimony of both parties was not credible and that, *inter alia*, Catherine's actions towards Adam belie her testimony that she was abused. For example, the court was unpersuaded that Catherine would send thousands of sexually explicit photos to a man who abused her. Moreover, it mentioned that the love letters Catherine sent to Adam indicate her mindset. Specifically, the court stated:

> "[S]he speaks in a loving manner of the respondent, says she'll miss him et cetera, et cetera. That belies her claim that she was terrified of the respondent and that he controlled every aspect of her life.
>
> There's no testimony that the respondent demanded that she send those letters to him, and she refers to herself at least in one of those letters as, quote, your

pet, closed quote ***."

The court further found that their BDSM relationship is "not on trial here" and that having such a relationship does not automatically equate to abuse "when adults consent to engage in this type of behavior." Therefore, the circuit court found that Catherine failed to prove by a preponderance of the evidence that Adam abused her under the Act and denied the petition for entry of a plenary order of protection against him.

¶ 13    Based on our review of the record, we cannot say that the circuit court's finding that Adam did not abuse Catherine or its denial of the entry of a protective order was against the manifest weight of the evidence as the court could have reasonably credited the fact that Catherine's failure to report abuse to family, friends, or law enforcement over the years of their relationship, coupled with sending him love letters and numerous explicit photos, was evidence that she was not being abused.

¶ 14    Next Catherine maintains that the circuit court erred when it excluded evidence regarding the parties' finances and Adam's firearms. Specifically, Catherine argues that the circuit court abused its discretion when it found that a question regarding how Adam used certain funds Catherine deposited into their joint bank account was irrelevant. She also argues that the circuit court abused its discretion when it found that the question asking Adam why he owned so many firearms was irrelevant.

¶ 15    A circuit court has broad discretion in determining the relevance of proffered evidence and that decision will be overturned on appeal only if the circuit court abused its discretion. *Carlyle v. Jaskiweicz*, 124 Ill. App. 3d 487, 496 (1984). A circuit court abuses its discretion when it acts arbitrarily, unreasonably, fails to employ conscious judgment, or when it ignores recognized principles of law, resulting in substantial prejudice. *Petryshyn v. Slotky,* 387 Ill. App. 3d 1112,

1116 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v. Bolden*, 197 Ill. 2d 166, 184, (2001).

¶ 16    Here, Catherine's question regarding how Adam used the funds that were deposited into their joint bank account was offered to establish that Adam financially abused or exploited her. In sustaining Adam's objection to this question, the court stated that Adam's day-to-day transactions were irrelevant to the issue of whether Catherine was abused and added, "if he withdrew a bunch of money and emptied the account that left her destitute and financially dependent on him, that's one thing. But just a daily going back and forth deposits and withdrawals and who objected to what is—that's really irrelevant." The circuit court did not limit any and all questions with respect to the parties' finances, but specifically stated that this particular question was irrelevant to the question of abuse as it would have no tendency to make it more or less probable that Adam was abusing Catherine. In making this determination, the court did not behave arbitrarily, unreasonably, or fail to employ conscious judgment. Therefore, we cannot say that the trial court abused its discretion in finding this evidence irrelevant to the determination of whether Adam abused Catherine.

¶ 17    Similarly, we cannot say that the circuit court abused its discretion in sustaining Adam's objection to Catherine's question regarding why he owned 30 firearms, as such a question has no tendency to make the allegations of Adam's abuse more or less likely. Catherine maintains that this question would prove whether Adam still had access to the guns and would provide a basis for her fear of him; however, there is nothing in the record to refute Adam's testimony that, although he still owned 30 firearms, he no longer had access to them. Therefore, if Catherine's fear associated with Adam's ownership of 30 firearms was simply his access to them, then his

reason for owning them would serve no probative value to the question of her fear or Adam's alleged abuse. Accordingly, we find that the circuit court did not abuse its discretion in finding this evidence irrelevant to whether Adam abused Catherine.

¶ 18     Having determined that the circuit court's ruling that Adam did not abuse Catherine was not against the manifest weight of the evidence and that the evidence supported a consensual BDSM relationship, we decline to reach the remaining arguments on appeal as they amount to a request that this court reweigh the evidence presented before the circuit court as trier of fact and substitute our judgment for its, which we cannot do. *Eychaner v. Gross*, 202 Ill.2d 228, 251 (2002).

¶ 19     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 20     Affirmed.